UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
Jack Mallette,

       Plaintiff

-against -

Valley Central School District; Robert Jurgens,
11th Grade English Teacher 2018 -2019 school year;
Jayme Ginda-Baxter, Principle of Valley Central High School;
Michael Conklin, Assistant Principle of Valley Central High School;
in their individual and official capacities

       Defendants.
-----------------------------------------------------------------------

**AMENDED COMPLAINT**

Docket No.: 20-CV-11070-LJL

## INTRODUCTION

1. This is a civil rights action against employees and officials of the Valley Central School District for depriving Plaintiff JM of established constitutional, statutory and common law rights.

2. Plaintiff attended Valley Central High School, in the Valley Central School District during the 2018 - 2019 school year as a Jr.

3. During this school year, Defendant Robert Jurgens, Plaintiff's 11th grade English teacher and a slew of Plaintiff's classmates routinely subjected him to severe and pervasive verbal and physical harassment on school grounds.

4. This harassment occurred on a near-daily basis beginning at the start of 2018-2019 school year and continued until he was forced to home school on or about January 2019 till the end of that year.

5. Plaintiff continually was harangued by his classmates, who referred to him using anti-gay terms such as "Faggot", "Homo," "Boy Lover," Pussy" and many other sexual expletives, and threatened to assault or injure Plaintiff numerous times.

6. Plaintiff was verbally attacked by fellow students while on school property.

7. Defendants were aware of the verbal and physical harassment and abuse, and had the authority to institute corrective and preventative measures, but Defendants repeatedly and

intentionally failed to take the necessary measures to stop it. Rather than appropriately addressing the harmful behaviour of its staff member Mr. Jurgens and it's other students, Defendants did nothing and waited until Plaintiff reached non-compulsory age, and then attempted to shut him out of mainstream high school. Defendant's failed to send work. Failed to transfer his class to another teacher, failed to discipline the teacher or the students who wrote the highly offensive January 11, 2019 poem about the Plaintiff or the students or teacher who taunted Plaintiff daily and continually until he left school.

8.      Defendants failed to act, and took affirmative actions detrimental to Plaintiff, because of Plaintiff's perceived sexual orientation, sex, and expression.

9.      Defendants deprived Plaintiff of the benefits of a high school education, and caused him to leave mainstream school at the age of 16 and 17 years old and miss most of his junior year.

10.     This is a case about the failure of the Valley Central School District and the Valley Central High School, a public school and the other Defendants to protect a young student from pervasive sexual harassment and bullying by other students and a member of its own faculty.

11.     Plaintiff experienced severe and pervasive sexual harassment and bullying by fellow students and a faculty member while he was student at the school during the 2018-2019 school year.

12.     School administrators were repeatedly notified about the harassment, and yet failed to investigate properly or discipline the responsible parties. Plaintiff was ultimately forced to leave the School as a result of School administrators' failure to investigate and stop the sexual harassment and bullying.

13.     Plaintiff graduated in June 2020.

14.     Defendants have been on notice of these claims since at least February 27, 2019 when a detailed 12 page letter and DASA complaint with attached exhibits was sent to the Defendants. Defendant's investigation of this matter failed to address or redress any of the issues regarding this student and Mr. Jurgens and the other 11th grade students acting with Mr. Jurgens' acquiesce.

15.     Specifically, this action challenges Defendants' denial of Plaintiff's rights secured under the Fourteenth Amendment of the United States Constitution (U.S. Const. Amend. I, U.S. Const. Amend. XIV), and 42 U.S.C.A. § 1983.

16.     Plaintiff seeks to vindicate his constitutional and statutory rights to equal access to educational opportunities. Defendants' violation of this Plaintiffs' rights include the intentional

enactment and enforcement of policies that discriminated against Plaintiff based on his perceived sexual orientation.

17. The Plaintiff was subjected to months of intentional sexual orientation and gender harassment, discrimination, violence and retaliation by other students and a faculty member in the Defendant District.

18. Despite many complaints to Defendants, no reasonable or effective corrective or protective response was provided to Plaintiff. Defendants intentionally allowed and nurtured a sexually hostile educational environment in the District's High School.

19. Defendants, under color of state law and with malicious intent, were deliberately indifferent to Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, Title IX of the Education Amendments, and rights secured by the New York State Constitution.

20. The harassment, both physical and verbal, occurred on school grounds and often in plain view of school officials. Plaintiffs and their parents reported the harassment to school administrators on multiple occasion

21. Plaintiff, having been ostracized, humiliated, threatened, and attacked at school, suffered serious emotional harm, including anxiety, anger, and depression.

22. Defendants were aware of the severe harassment Plaintiff underwent; yet Defendants' response to the abuse was grossly inadequate.

23. Despite their obligations as school officials entrusted with the safety and education of all students, District administrators and teachers ignored, minimized, dismissed, and blamed the Plaintiff for the abusive behavior by other students and a member of its own faculty. When school officials belatedly took action, their response was ineffective.

24. The anti-gay and gender-based harassment within the District is rooted in and encouraged by an official District-wide policy of not reprimanding people in effective way who denigrate people like the events that were suffered by Plaintiff.

25. Because of Plaintiffs' perceived sexual orientation Defendants have been deliberately indifferent to the harassment endured by the Plaintiff, and have failed to create effective policies to protect such students from the harassment and abuse they have suffered.

26. Defendants have failed to adequately train District staff to address and prevent harassment, and have also failed to adequately inform students about any District policies—to the extent they exist—that purport to prohibit such harassment.

27. Defendants have intentionally discriminated against Plaintiff by adopting a policy and practices that require District staff to ignore harassment of students, and that restrict the remedial measures that the District, schools, or staff can take to address and prevent such harassment.

28. Defendants knew or should have known that the lack of adequate procedures and training, and the District's affirmative policies in particular, harmed Plaintiff, and placed him at unreasonable risk of future harm.

29. Plaintiff also brings this suit to vindicate his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title IX. He seeks relief in the form of compensatory and punitive damages, seeking to discipline the perpetrator of the harassment and those that condoned it.

## JURISDICTION

30. This Court has jurisdiction over claims arising under the United States Constitution and federal statutes pursuant to 28 U.S.C.A. §§ 1331, 1343, 2201 and 2202.

31. Removed.

32. Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391.

## PARTIES

33. Plaintiff, JM currently resides at 100 Ulster Ave, Walden, NY 12586. His date of birth is 12/31/01. Plaintiff was a student at Defendant School, a school within the District, from 2018-2019 school year, when he left school in the Spring of his 11th grade year of school because of the harassment that he was experiencing at the high school.

34. Defendant Valley Central School District is a public school district and political subdivision of New York State, established, incorporated, organized, and operating pursuant to law as an independent school district. Defendant District is a person within the meaning of 42 U.S.C.A. § 1983. Defendant District: (1) is an education program or activity receiving federal financial assistance within the meaning of Title IX, (2) is an educational institution within the meaning of New York State Law, and (3) has been at all relevant times responsible for providing the Plaintiff with a public education free from discrimination on the basis of race, sex, gender and sexual orientation. Defendant District's principal place of business is 1175 State Rte 17k, Montgomery, NY 12549.

35. Defendant Robert Jurgens, was at all times relevant to this action the Plaintiff's 11th Grade English Teacher during the 2018 -2019 school year whose principle place of business is 1175 State Rte 17k, Montgomery, NY 12549. He is being sued in his individual and his

official capacity.

36. Defendant Jayme Ginda-Baxter was the Principle of Valley Central High School at all times relevant to this action whose principle place of business is 1175 State Rte 17k, Montgomery, NY 12549. She is being sued in her individual and his official capacity. Defendant Jayme Ginda-Baxter is the Principal for Valley Central High School. As Principal she is responsible for the day-to-day operations of Valley Central High School, and for developing and implementing policies and procedures to prohibit sexual orientation and gender harassment and discrimination and governing the reporting, investigation and correction of actions of sexual orientation and gender discrimination and harassment; in addition, she must notify students who complain of sexual orientation and gender harassment and discrimination about available complaint procedures, receives reports of sexual orientation and gender discrimination and harassment, investigates allegations, determines whether discrimination and harassment occurred, takes effective protective and corrective administrative actions when discrimination and harassment have occurred, supervises and trains subordinate staff within the District, and ensures that educational services are provided in a lawful manner in accordance with accepted professional judgment, practice and standards. The Principal has final policymaking authority with respect to the day-to-day enforcement of the School's rules, equal opportunity, anti-harassment, and anti-bullying policies within Valley Central High School as its Principal. The Principal has the authority to take corrective action on behalf of the School District to stop discrimination and harassment within the Valley Central High School and to discipline perpetrators of discrimination and harassment. In this case she failed to do so.

37. Defendant Michael Conklin, was the Assistant Principle of Valley Central High School at all times relevant to this action whose principle place of business is 1175 State Rte 17k, Montgomery, NY 12549. He is being sued in his individual and his official capacity.

38. Plaintiff alleges that each of the Defendants performed, participated in, aided, and/or abetted in some manner the acts averred in this action, proximately caused the damages averred below, and is liable to Plaintiff for the damages and other relief sought in this action.

39. Based upon information and belief, Plaintiff alleges that Defendant Valley Central School District was responsible for the training and supervision of the other named Defendants.

40. Defendants were responsible for developing and implementing policies and procedures, specifically those prohibiting sexual orientation and gender harassment and discrimination and governing the reporting, investigation and correction of actions of sexual orientation and gender discrimination and harassment, and they are also responsible for supervision and training of subordinate staff within the District, to ensure that educational services are provided in a lawful manner in accordance with accepted professional judgment, practice and standards.

41. Defendants are legally responsible for the operation of all of the schools in the

District, and for the conditions in those schools.

42. Defendants are responsible for the administration of educational services for all students enrolled in the District; as such, Defendants are subject to the prohibitions of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

43. Valley Central School District is a recipient of federal financial assistance and is therefore subject to Title IX, 20 U.S.C.A. §§ 1681 et seq., and its implementing regulations.

## FACTS

44. Beginning on or about September 2018 Plaintiff was harassed on the basis of his identity of gender or sexual orientation in District schools. The harassment Plaintiff experienced was sufficiently severe and persistent that the Plaintiff was unable to participate in or benefit from educational programs in the District. This harassment created a hostile environment in the District.

45. The school and District officials with authority to address the harassment knew or should have known about the harassment Plaintiff experienced. The Plaintiff and his mother reported incidents of identity of gender or sexual orientation harassment to the school defendants on more than one occasion yet the harassment continued unabated.

46. Often, District personnel ignored the identity of gender or sexual orientation harassment allegations. In some cases, District personnel did not respond to reports of harassment. In other cases, some District personnel told Plaintiff that there was nothing they could do. Some District personnel told students to ignore the harassment. Generally, District officials failed to take any action to stop the harassment.

47. When the District did respond to reports of identity of gender or sexual orientation harassment to the Plaintiff, the District's response improperly placed the burden of stopping the harassment on the student being harassed.

48. The District's response stigmatized the Plaintiff who was being harassed and isolated him from the educational environment.

49. The District knew its responses to Plaintiff's complaints of identity of gender or sexual orientation harassment were inadequate because the harassment continued or escalated. The District's failure to respond adequately led to a continuation and exacerbation of the hostile environment in the District.

50. In addition, the District's policies and procedures did not adequately address and prevent Plaintiff from suffering identity of gender or sexual orientation harassment, and therefore contributed to the hostile environment. The District's policies and procedures did not include

prohibitions against gender-based harassment. The District's policies and procedures failed to provide clear guidelines regarding appropriate responses to sex-based harassment, including gender-based harassment. The District did not have an established policy or procedure for when to contact a student's parent upon receipt of an oral report of student harassment. The District lacks a uniform procedure of tracking incidents of harassment. In addition, the District has not designated an employee who is responsible for coordinating the District's response to identity of gender or sexual orientation harassment, which is required by Title IX regulations. Without these policies and procedures, the District lacks a consistent and effective approach to addressing identity of gender or sexual orientation harassment of the type suffered by Plaintiff.

51. The implementation and interpretation of the District's policies and procedures by District personnel have contributed to a hostile environment. Some District personnel have failed to follow the District's policies and procedures by not investigating complaints of identity of gender or sexual orientation harassment of students. Other District personnel have interpreted the District's policies and procedures as prohibiting them from addressing identity of gender or sexual orientation harassment.

52. The failure of District personnel to properly implement and interpret District policies and procedures has deterred plaintiff from reporting or continuing to report harassment, thereby allowing some students and faculty members to harass Plaintiff without consequence.

53. These interpretations of the District's policies and procedures contributed to a hostile environment.

54. Based on the evidence as set forth above, a hostile environment based on identity of gender or sexual orientation exists in the District, the District knew or should have known about the hostile environment, and the District failed to adequately address it.

55. After January 11, 2019, On multiple occasions, the sexual orientation and gender discrimination, harassment and violence experienced by Plaintiff was so severe that Plaintiff's mother removed him from the District for periods of time during his 11th and 12th grade years. In 2019 his physician, on or about April 11, 2019 causally related the Plaintiff's issues at school to his manifesting mental health and physical symptoms and urged the Defendants to correct the course of actions.

56. As a student attending Valley Central District High Schools Plaintiff was subjected to almost daily verbal and physical sexual orientation and gender harassment and violence from other students and a faculty member during the 2018-2019 school year.

57. The verbal harassment included the following derogatory statements, orally and in writing: being regularly referred to as chicken little or dorky, he was called "Faggot", "Homo," "Boy Lover," Pussy" and many other sexual expletives every day, it was written for a public class assignment that he kinda looks like a he/she; and that he loves something that starts with a p.

Meaning of course male genitalia.

58. Defendant Robert Jurgens called the Plaintiff chicken little, which was an effort to make fun of the fact that he "was a scrawny dude that wore glasses". Never by his real name. Defendant Robert Jurgens included other people in his taunts of Plaintiff, either by asking people if they thought he looked like that or Mr. Jurgens stop class and pull up pictures of chicken little or the guy from Saving Private Ryan in order to draw comparisons and to single out the Plaintiff.

59. In November 2018, it started to get worse. Plaintiff was absent one day and while he was gone Defendant Robert Jurgens went around the room and read a story about how the sky is falling and about a nerdy kid, all in reference to chicken little, and then associated it's lead character with the Plaintiff..

60. Throughout December 2018 the taunting worsened and Defendant Robert Jurgens continued to put 'Chicken Little' wherever the Plaintiff's name is supposed to go on work.

61. Some of the comments were made by the District Staff. Others in the presence of District staff. Despite repeated reports to District administration, educators in the District did nothing to stop this pattern of discrimination, harassment, bullying and violence against Plaintiff.

62. On one occasion, a student in class asked Defendant Robert Jurgens how to spell narcissism and Defendant Robert Jurgens spelled J-a-c-k as the answer. Hardly appropriate behavior by a high school teacher towards an already maligned student.

63. Robert Jurgens as the 11th grade English teacher would make fun of Jack for wearing glasses. Then the class would.

64. Robert Jurgens would make Chicken little jokes - it's a chicken with glasses - then the class would. It carried over to the hallways, the lunchroom and the cafeteria.

65. Robert Jurgens would constantly comment about Plaintiff's looks, body type, attire and accessories. Things like "that pesky dude from that a movie, "that Jack looks like the guy from saving private ryan - the guy with glasses" or " Jack is like Holden Caulfield from Salinger's The Catcher in the Rye"

66. Robert Jurgens routinely referred to Plaintiff by words other than his formal name.

67. Robert Jurgens singled the Plaintiff out from other students for disparate, disproportionate discipline. Mr. Jurgens would yell at Plaintiff for talking in class while everyone else was talking in class also and would reprimand him inappropriately and sometimes raise his voice at the Plaintiff.

68. Prior to January 11, 2019 Plaintiff's grades were excellent, in the B+ high 80's

range. By April of that school year Plaintiff would be an effectual dropout.

69. He stopped showing up because he didn't want to be there. It slowly built up. It started at the beginning of the school year when Mr. Jurgens began to single him out. It culminated with the Jan 11th in class attempted take down via poem..

70. On January 11, 2019 a classroom assignment turned poem was created in Mr. Jurgens class that was written one sentence at a time by each student adding a line and then passing it around, to include Mr. Jurgens participation as well. The first sentence that read: "Is this the real life, is this just fantasy?" The note then continued,

> " Right when I said that the dream ran from me.
> Jergens talking about Jack spilling that tea
> Chicken Little probably likes the coup with split pea
> Jack IS Built Like a Pee Wee
> but he kinda looks like a he/she
> And Jack loves something that starts with a p
> He wear them glasses like bro you can't get any more dorky"

71. Eventually the poem was collected by Mr. Jurgens and given to Plaintiff. Mr. Jurgens then instructed the Plaintiff to read it out loud to the class.

72. An utterly humiliated and defeated Plaintiff refused to read the poem and left the class five minutes early.

73. After that the taunting became unbearable. In the class, the hallway, in the gym People, Plaintiff didn't know began to come up to him and ask if he was the guy that "Jurgens always talked shit about." Especially popular kids. Oftentimes, this was the first time Plaintiff would meet these people.

74. The accosting got worse, Plaintiff would be called "faggot" all the time in the hallway. When people realized Plaintiff wasn't in school because of this, he would get hate messages. One time Plaintiff saw some students walking outside while Plaintiff was walking the dog and they all verbally attacked him because he was allegedly "starting a problem with their favourite teacher."

75. Throughout Plaintiff's senior year, Defendant Robert Jurgens gave Plaintiff dirty looks in the hallway, and go out of his way to talk to whoever Plaintiff was walking with in an effort to intimidate Plaintiff. This made school a frightful experience for the Plaintiff. Both the English teacher Plaintiff had for the last month of his junior year and his senior year were both curious as to what happened, and told Plaintiff that they had heard rumours. This made Plaintiff feel most uncomfortable.

76. Plaintiff went to his guidance counselor multiple times about this. Most times, all that Plaintiff would be told was to just try and talk to Defendant Robert Jurgens, and to work it out on his own. None of the advice Plaintiff received helped the situation in any way or made Plaintiff feel better emotionally, or secure when he was in school. With all of this combined, Plaintiff felt completely and utterly alone in school. Plaintiff felt that not only was he harassed by students, but by teachers too. Plaintiff reports that, "It's a terrible feeling that nobody should have to go through."

77. In addition to these verbal attacks, Plaintiff was physically accosted and attacked by his peers at school, his path was blocked ingress and egress restrained. Despite repeated reports to District administration, educators in the District did nothing to stop this pattern of violence against him. Plaintiff and his mother made several complaints to District staff and administration and reported the various incidents directly to the named defendants. Plaintiff reported the pattern of discrimination, harassment and violence directly to the District's Board of Education in his 11th grade year.

78. In response to these complaints, Defendants ignored, tolerated or trivialized the discrimination, harassment and violence; they have yelled at plaintiff, blamed him for the bullying and harassment, told him to toughen up, and have accused him of lying. In response to formal notice of these claims, Defendants have retaliated against Plaintiff and family by not remediating the situation or assisting the Plaintiff with alternate education methods when the taunting became unbearable and the gales of November came early.

79. After reporting incidents to District administration, the harassment, discrimination and violence did not cease; in fact, it became worse. Conditions at school became so intolerable that Michael Yah, MD Plaintiff's treating physician, from the West Point Keller Army Community Hospital, prescribed medications for depression and a physical illness related to the depression, and has diagnosed him with acute stress reaction.

80. Upon information and belief Defendants made no meaningful effort to investigate or address the harassment and violence, and did not take any effective corrective or protective action.

81. Defendants were deliberately indifferent to Plaintiff's rights, his mental and physical health, the continuing nature of the offenses, and his need for adult intervention and protection.

82. As a result, a hostile educational environment was effectively caused, encouraged, accepted, tolerated or left uncorrected by Defendants, and Plaintiff's tormenters were emboldened and encouraged to continue their harassment and abuse.

83. Upon information and belief, District administrators up to and including the named Defendants were aware of and tolerated the culture of sexual orientation and gender discrimination in the District, and condoned the development, maintenance and expansion of a pattern, practice or custom of discrimination that created a hostile educational environment with systemic effects.

84. District officials encouraged a climate of sexual orientation and gender harassment and discrimination at Valley Central High School and Plaintiff was caused to suffer harm. The District declined to remedy the persistent and severe violation of civil rights, of which high level officials were routinely notified.

85. As a result of the orientation and gender harassment, discrimination and verbal assaults that took place in the Valley Central High School daily, retaliation by students and faculty, and the District's refusal to take effective remedial measures even after Plaintiff and his mother reported the abuse, Plaintiff became depressed and demoralized, had difficulty concentrating, and his class work and grades declined. He refused to go to school at times and became so ill and overwhelmed at school that he often left school early, causing stress with his mother who was afraid of violating compulsory attendance requirements.

86. All extra curricular activities including varsity swimming and additional leadership roles within JROTC ceased.

87. The harassment, discrimination, violence and retaliation at school created a hostile and abusive environment that substantially interfered with Plaintiff's education. Plaintiff's ability to participate in and benefit from District programs and activities was impaired.

88. Upon information and belief the District defendants discriminated against Plaintiff on the basis of gender and sexual orientation, in that Defendants responded to his complaints of harassment, discrimination and violence inadequately and that Plaintiff was singled out because he looked differently than similarly situated students who were or were perceived to be heterosexual or who conformed to stereotypical male/female expectations, and in their failure to correct an abusive and hostile educational environment.

89. Upon information and belief District officials had a custom or practice of treating similarly situated students differently, without any substantial or rational relation to an important or legitimate governmental objective.

90. District Defendants responded to Plaintiff's many complaints over more than 3 months with deliberate indifference, taking only ineffective measures to respond, in a manner clearly unreasonable in light of the known circumstances, exacerbating the harassment and violence, increasing the risk of future harm to him and compounding his injuries.

91. Upon information and belief, all Defendants knew of the clearly established rights of students to an educational environment free from hostile and abusive sexual orientation and gender harassment, discrimination and violence, and knew about the District's duty to effectively correct peer sexual orientation and gender harassment, discrimination, violence and retaliation in its schools.

92. The Defendants' actions and failures to act were intentional, deliberate, and undertaken with malice and bad faith.

93. The Defendants failed to properly train and supervise administrators and staff in the enforcement of Plaintiff's constitutional and statutory rights to be free from sexual orientation and gender discrimination, harassment, violence and retaliation.

94. The Defendants actively participated in the sexual orientation and gender discrimination, harassment, violence and retaliation suffered by Plaintiff.

95. The harassment of the plaintiff exploded after the January 11 incident in Mr. Jurgens classroom. Whereas Plaintiff had generally been accepted by his peers prior to January 11, 2019, Plaintiff was now regularly subjected to slurs in the hallways and in the classrooms. On school grounds, students openly, and often in the presence of school officials, called Plaintiff faggot and/or pussy.

96. Because of the constant barrage of insults and threats Plaintiff faced at school, and unable to forego school altogether, he tried not to go anywhere at school alone, and avoided school restrooms whenever possible, out of fear of being verbally or physically attacked.

97. The abuse suffered at school interfered with Plaintiff's academic performance and his ability to attend school. On many days, he missed school altogether because of physical threats against him. As a consequence, Plaintiff's grades fell. The abuse also caused him to develop anxiety, physical ailments and depression.

98. Given the constant abuse he was enduring at school and his growing hopelessness about the school's willingness to stop the harassment, Plaintiff stopped attending classes at Valley Central High School in the spring of his 11th grade year till the end of the year.

99. On information and belief, Valley Central High School and the District have made no adequate effort to educate staff about issues of harassment of LGBT students or students who are gender non-conforming. At no time during Plaintiff's tenure at Valley Central High School did the school or the District conduct adequate training for students, teachers, or administrators addressing harassment of LGBT students or students who are gender non-conforming.

100. Defendants' discriminatory conduct, their intentional, reckless, and negligent failure to take action to remedy the harassment and abuse of Plaintiff, and their failure to provide Plaintiff with a safe education in a suitable environment caused Plaintiff to suffer severe and extreme emotional distress and psychological damage, including but not limited to, an inability to concentrate on his studies, depression, debilitating fear, despair, anger, humiliation, and anxiety. Plaintiff also suffered bodily injury, including, but not limited to, physical injury, disruption of sleep, insomnia, loss of appetite, and suicidal thoughts.

101. As a result of Defendants' actions, Plaintiff sought psychological counseling, and has been diagnosed with acute stress disorder and acute gastritis brought on by chronic stress and anxiety. Furthermore, Plaintiff lost substantial amounts of school time as a result of Defendants' actions.

102. At all relevant times, Defendants were acting within the course and scope of their employment and under color of state and local law. The specific incidents of discrimination, harassment and failure to take action alleged in this complaint are merely representative, not exhaustive. A complete list of the incidents suffered by Plaintiff during his 11th grade high school year in the Valley Central School District would impossible to recollect.

103. On numerous occasions, Plaintiff reported the incidents of harassment and abuse he suffered to individual Defendants. Defendants failed to take steps to address or prevent the harm to Plaintiff, including, but not limited to, disciplining students who harassed Plaintiff; fully investigating Plaintiff's complaints of harassment; educating faculty and students about District policies and procedures; and training faculty and students so as to prevent discrimination or harassment in the future.

104. The acts and omissions of Defendants not only failed to remedy, but also fostered and promoted, the harassment of Plaintiff by other students.

105. Defendants' direct actions in providing inappropriate educational placements for Plaintiff and censoring Plaintiff further harmed him.

106. As a direct, legal, and proximate result of Defendants' violations of Plaintiff's legal rights, Plaintiff has been damaged in an amount in excess of five million dollars.

107. Upon information and belief, Defendants have policies and procedures to prevent and remedy harassment, discrimination, and/or violence suffered by all students, and take appropriate action to prevent and remedy such harms for non-gay students, yet did not do so for Plaintiff.

108. Upon information and belief, Defendants have policies and procedures to prevent and remedy harassment, discrimination, and/or violence suffered by all students, and take appropriate action to prevent and remedy such harms for female students, yet did not do so for

Plaintiff.

109. The acts and omissions alleged above by Defendants were committed with deliberate indifference towards the well-being and rights of Plaintiff.

110. All of the acts or omissions alleged above by Defendants were committed intentionally and purposefully because of Plaintiff's perceived sexual orientation.

111. The acts and omissions alleged above by Defendants were committed intentionally and purposefully because of Plaintiff's perceived sexual orientation.

112. The acts and omissions alleged above by Defendants were committed intentionally and purposefully because of the content and viewpoint of Plaintiff's expression about his sexual orientation.

113. At all times relevant to this action, Defendants were acting in a ministerial, operational, and non-discretionary capacity and/or performing ministerial, operational, and non-discretionary functions or duties.

114. Defendants owed Plaintiff a duty of care to ensure the safety and well-being of Plaintiff and all students. This overall duty of care encompassed a duty to supervise the conduct of all students, to enforce rules and regulations necessary for the protection of students, and to take appropriate measures to protect students from the misconduct of other students. Defendants, in the course and scope of their duties as employees of District, had a duty to exercise due care to protect Plaintiff from harassment and other misconduct by students and by other Defendants. Encompassed within Defendants' duty to protect Plaintiff and other students was a duty to exercise due care in investigating Plaintiff's complaints of assault, harassment, and discrimination by other students; to take reasonable precautions to protect Plaintiff from harassment, assaults, abuse and discrimination that reasonably could be anticipated; to make police reports of the crimes; to take prompt and appropriate action to protect Plaintiff from further harassment and fear; and to remove dangerous students from the school, if necessary. Defendants owed every duty alleged in this paragraph to Plaintiff.

115. At all relevant times to this action, Defendants James Hession, Dignity Act Coordinator; Eileen Purcell, School Counselor, Jayme Ginda-Baxter, Principle of Valley Central High School; Michael Conklin, Assistant Principal of Valley Central High School; Michael Bellarosa, Assistant Superintendent; Marianne Serratore, Title IX Coordinator; John Xanthis, Superintendent of Schools owed a Page 15 of 24 ministerial, operational, and non-discretionary duty to Plaintiff to take reasonable care in training and supervising their employees and subordinates.

116. By letter dated April 11, 2019 and given to the Defendants, Michael Yah, MD, wrote and stated that "My patient JM was seen in my office on 10 April 2019. He has been

diagnosed with acute stress reaction due to what he reports stem from the current events at school. His symptoms include decreased appetite with approximately 6 lbs weight loss since July 2018, gastrointestinal issues, and eczema. I recommend psychology to help with stress management. Please help assist JM and his family in resolving this issue so that he may move forward with his school studies and also improving his health concerns." Additionally, JM was under the care of Pediatric Gastroenterologist Dr. Deepali Tewari. In September 2020, she diagnosed JM with acute gastritis brought on by chronic stress and anxiety.

117. No action was taken.

## AS AND FOR A FIRST CAUSE OF ACTION

118. Plaintiff incorporates by reference all preceding paragraphs as if they were fully restated herein.

119. Defendants, acting under color of state law, have deprived Plaintiff of the rights, privileges, or immunities secured by the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, in that Defendants, without justification, treated Plaintiff differently than other similarly situated students and student groups on the basis of his identity of gender or sexual orientation as described in detail above.

120. Defendants' policy of tolerance of such behavior has substantially contributed to the creation of an anti-gay climate in the District and exacerbated the harassment of Plaintiff while he attended Valley Central District schools during his 11th grade year.

121. Defendants had actual notice that harassment based on identity of gender or sexual orientation was so severe, pervasive, and offensive that it created a hostile climate that deprived Plaintiff of access to educational programs, activities, and opportunities.

122. Defendants were deliberately indifferent to the harassment of Plaintiff based on his identity of gender or sexual orientation in violation of Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. Defendants failed to adequately train school staff about any policies prohibiting harassment and discrimination on the basis of identity of gender or sexual orientation. Defendants' deliberate indifference and/or failure to train caused Plaintiff to be subjected to the described discrimination and harassment.

123. As an actual and proximate result of Defendants' conduct, Plaintiff has been injured and suffered damages to be determined according to proof.

124. Plaintiff requests judgment in his favor against Defendants as set forth in the Prayer for Relief.

## AS AND FOR A SECOND CAUSE OF ACTION
Discrimination Based on Sex — 20 U.S.C.A. §§ 1681, et seq.

125.  Plaintiff incorporates by reference all preceding paragraphs as if they were fully restated herein.

126.  The School District, and each school within the District attended by Plaintiffs, are recipients of federal financial assistance.

127.  The acts and omissions of Defendants violated Plaintiff's rights under Title IX by discriminating against him on the basis of sex.

128.  Defendants had actual notice that harassment based on sex was so severe, pervasive, and offensive that it created a hostile climate based on sex that deprived Plaintiff of access to educational programs, activities, and opportunities.

129.  Defendants exhibited deliberate indifference to the harassment of Plaintiff based on sex in violation of Title IX. This indifference caused Plaintiffs to be subjected to the described sex discrimination and gender-based harassment.

130.  Defendants violations of Title IX were the actual, direct, and proximate cause of injuries suffered by Plaintiffs as alleged.

131.  Plaintiff requests judgment in their favor against Defendants as set forth in the Prayer for Relief.

## AS AND FOR A THIRD CAUSE OF ACTION

132.  Plaintiff incorporates by reference all preceding paragraphs as if they were fully restated herein.

133.  Based on Defendants' conduct as alleged above, Defendants, on multiple occasions and while acting under color of state law, intentionally and deliberately deprived Plaintiff of his civil rights guaranteed by the Fourteenth Amendment to the United States Constitution, by denying him the equal protection of the laws. As a direct and proximate result of Defendants' acts and omissions, Plaintiff was injured and suffered damages.

134.  Defendants, while acting under the color of state law, intentionally and deliberately deprived Plaintiff of his rights guaranteed by Title IX, in that Defendants participated in the creation, maintenance, and expansion of a hostile educational environment that discriminated against students who did not conform with stereotypical gender stereotypes.

135. Defendants' failures to adequately report and investigate allegations of violence, harassment and discrimination, and their failure to respond with effective corrective and protective measures, is not substantially or rationally related to any compelling or legitimate governmental purpose.

136. Defendants' conduct shocks the conscience of reasonable persons and is intolerable in a civilized community or in a school district charged with effectively responding to incidents of sexual orientation and gender harassment, discrimination, and violence.

137. Plaintiff brings this lawsuit pursuant to 42 U.S.C.A. § 1983. The Defendants' systematic and continuous intentional misconduct occurred under color of state law. Their investigation was cursory at best.

138. The actions of sexual orientation and gender harassment, discrimination and violence, as well as deliberate disregard of Plaintiff's complaints about sexual orientation and gender harassment, discrimination and violence by all Defendants, substantially interfered with Plaintiff's education, deprived him of his right to an education equal to that of his peers, and deprived him of equal protection as a student perceived to be homosexual, as guaranteed by 42 U.S.C.A. § 1983, and secured to Plaintiff under the Fourteenth Amendment to the United States Constitution and Title IX.

139. This conduct gives rise to a claim for relief pursuant to 42 U.S.C.A. § 1983 for declaratory and injunctive relief, for compensatory damages, including pain and suffering, against the Defendants in an amount not less than five million dollars and for punitive damages in amounts to be proved at trial.

140. Defendants are liable to Plaintiff based on their knowledge of, deliberate indifference to, and tacit approval of the harassment, discrimination, violence, and retaliation endured by Plaintiff, and their failure to effectively and reasonably respond to Plaintiff's complaints, based in part on their failure to train and supervise subordinate employees, including all of the educational professionals who witnessed or to whom Plaintiff reported the harassment and discrimination.

141. The District is liable for the discriminatory conduct of its students after notice and a reasonable opportunity to correct the conditions of a hostile educational environment suffered by Plaintiff, and for the discriminatory enforcement of federal and state law, as well as District policy, by all Defendants.

142. As a proximate result of Defendants' discrimination, Plaintiff has been denied his right of equal access to a public education, he has suffered severe humiliation, anguish, pain, suffering, physical illness and damage to his good name and reputation, as well as other incidental and consequential damages and expenses, plus costs and attorney's fees, all to Plaintiff's damage in amounts to be proved at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION

143. Plaintiff incorporates by reference all preceding paragraphs as if they were fully restated herein.

144. At all relevant times, Plaintiff was an individual entitled to the protections set forth in Title IX against discrimination in the education environment on the basis of his sex and gender and of his failure to conform to stereotypical gender-specific conduct.

145. At all relevant times, the District was an educational agency within the meaning of Title IX and was prohibited from discriminating directly or failing to correct discrimination in the public education environment on the basis of sex, gender, and failure to conform to a gender-specific stereotype.

146. Plaintiff was discriminated against by the District on the basis of his sex and gender in violation of Title IX, in that the District, by its conduct, failed to effectively address and correct the sexual orientation and gender harassment and violence visited upon Plaintiff by his peers, which failure had the effect of encouraging such harassment and violence, resulting in the creation of a hostile educational environment, thereby depriving Plaintiff of equal access to a public education.

147. This course of conduct was outrageous, done in a deliberate, callous, malicious, fraudulent and oppressive manner intended to injure Plaintiff, was done with an improper motive amounting to malice by the individual actions of District representatives, agents and employees, thereby depriving Plaintiff of equal access to a public education.

148. As a proximate result of Defendants' discrimination, Plaintiff has been denied his right of equal access to a public education, he has suffered severe humiliation, anguish, pain, suffering, physical illness and damage to his good name and reputation, as well as other incidental and consequential damages and expenses, plus costs and attorney's fees, all to Plaintiff's damage in amounts to be proved at trial.

149. As a result of the discriminatory conduct and actions of Defendants, Plaintiff has no effective, adequate, or complete remedy at law; Defendants continue to engage in the wrongful practices alleged in this Complaint, including failure to implement federal and state law as well as its own policy prohibiting sexual orientation and gender harassment, discrimination and violence, and engaging in effective resolution of such complaints. Plaintiff seeks injunctive relief against Defendants requiring appropriate training and supervision of administrators and staff regarding proper reporting, investigation, and effective resolution of complaints of sexual orientation and gender harassment, discrimination and violence so that other students do not suffer similar harm in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief and asks that the Court:

1. Award the Plaintiff declaratory relief;

2. Award the Plaintiff compensatory damages against each appropriate Defendant under each cause of action numbered one through "fourth" written above in an appropriate amount;

3. Award the Plaintiff punitive damages against all Defendants under each cause of action numbered one through "Forth" written above in an appropriate amount;

4. Order Defendants to provide adequate training and supervision of all staff and students regarding the duties of the school to effectively correct peer harassment, discrimination, violence and retaliation; and

5. For attorney's fees, expenses, and costs incurred in the prosecution of this action pursuant to 42 U.S.C.A. § 1988 and other applicable law;

6. For such other and further relief as the Court may deem just and proper.

Dated: April 19, 2021

Michael D. Meth (mm9489)
Meth Law Offices, PC
Attorneys for Plaintiff
PO Box 560
Chester, NY 10918
(845) 469-9529
michael@methlaw.com

## VERIFICATION

STATE OF NEW YORK    )
                     ) :ss:
COUNTY OF ORANGE     )

Plaintiff JM being duly sworn, says that he is the Plaintiff in the above-named proceeding and that he has read and reviewed the above verified complaint and that the factual averments contained in the verified complaint have all been provided by him and have been verified via produced documents and that the allegations are true to his own knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters he believes it to be true.

_____
JM

Sworn to before me this
19th day of April 2021

_____
Notary Public

MICHAEL D. METH
Notary Public, State of New York
Qualified in Orange County
Registration No. 02ME6006164
Commission Expires _____